UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY BERKAN, Individually and as the Executrix

                             Plaintiff,

                            <u>DECISION AND ORDER</u>

                            06-CV-6150L

        v.

PENSKE TRUCK LEASING CANADA, INC., et al.,

                             Defendants.
_____

HELEN PETROLAWICZ, Administrator of the Estate of
Vincent John Petrolawicz, Jr., a/k/a Vincent J. Petrolawicz, Jr.,

                             Plaintiff,

        v.                     06-CV-6151L

P &W  INTERMODAL, INC., et al.,

                             Defendants.

_____

ROBERT SCHMIDT,

                             Plaintiff,

        v.                     06-CV-6152L

P&W INTERMODAL, INC., et al.,

                             Defendants.
_____

Plaintiffs, an individual injured in a motor vehicle accident and administrators of the estates of two of his companions who were killed as a result of the same collision, commenced these actions for personal injury, wrongful death and negligence.  The accident took place on June 30, 2004, when a tractor trailer leased by defendant P&W Intermodal, Inc. ("P&W") from defendant Penske Truck Leasing Canada, Inc. ("Penske"), and operated by P&W employee Ronald LeFor ("LeFor"), collided with a vehicle driven by Kenneth Berkan ("Berkan") and occupied by passengers Vincent J. Petrolawicz, Jr. ("Petrolawicz"), and Robert Schmidt ("Schmidt").  Berkan and Petrolawicz were killed, and Schmidt sustained injuries.

An administrator for Berkan's estate commenced an action on his behalf in New York State Supreme Court, Steuben County, on January 20, 2006 against Penske, LeFor and P&W.  Schmidt, and an administrator for Petrolawicz's estate, commenced their actions in New York State Supreme Court, Steuben County, on March 16, 2006 against Penske, LeFor, P&W, and P&W's parent and/or sister corporations, Transforce, Inc., Transforce Income Fund, and  Transforce N.J.N., Inc. d/b/a/ Transpel and P&W Intermodal.  All three  actions were subsequently removed to this Court.

LeFor was dismissed from each action by stipulation in January 2008.[1]  Plaintiffs Petrolawicz and Schmidt have moved for partial summary judgment against the remaining defendants on the issue of negligence, (Petrolawicz Dkt. #38, Schmidt Dkt.#38), and Penske has moved and cross-moved in each case for summary judgment dismissing all claims against it (Berkan Dkt. #56,

---

[1]  In January 2008, the  parties filed stipulations in each action concerning the status of LeFor, who died on October 22, 2007.  Pursuant to the stipulations, LeFor is dismissed from the action with prejudice, and the plaintiffs have agreed not to pursue any judgment against him or his estate, in this action or in any future proceeding.

Petrolawicz Dkt. #46 (styled as joint motion encompassing both Petrolawicz and Schmidt actions)). For the reasons that follow, Penske's motions are granted, and Petrolawicz and Schmidt's' motions are granted with respect to the remaining defendants.

### FACTUAL BACKGROUND

On April 15, 2004, P&W leased a 2003 Freightliner tractor from Penske, a motor vehicle leasing company, in the province of Alberta, Canada. Approximately two months later, the accident at issue occurred.

On the afternoon of June 30, 2004, LeFor was operating the tractor and was towing a trailer. As LeFor approached a lighted intersection in the town of Geneseo, New York, he observed that a vehicle driven by Berkan and occupied by Berkan, Petrolawicz and Schmidt, was stopped in traffic in front of him, the last of several vehicles waiting at the intersection. LeFor violently rear-ended and overran the Berkan vehicle, which was crushed beneath the tractor and pushed against the vehicle in front of it. In all, four vehicles in front of the tractor trailer were rear-ended and sustained damage from the force of the initial collision. Both Berkan and Petrolawicz were killed, and Schmidt sustained serious injuries.

The accident was investigated by local law enforcement. Pursuant to the accident report filed with the New York State Department of Motor Vehicles, the collision was attributed solely to driver error on the part of LeFor in combination with the gross overloading of the trailer. LeFor was issued citations for operating the tractor trailer unsafely, and operating an overweight vehicle.

Although LeFor provided a self serving statement to investigators indicating that the brakes had not responded properly when he attempted to stop, the tractor was inspected by the Federal

Motor Carriers Safety Administration ("FMCSA") following the accident and it was found to be mechanically sound, with the brakes operating within an acceptable range. The FMCSA also determined that LeFor had been following the Berkan vehicle too closely and failed to slow or stop to avoid the collision, and that the trailer was overweight by 5,650 pounds.

## DISCUSSION

### I.      Summary Judgment Standard

Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### I.      Penske's Motion For Summary Judgment

Penske has moved for summary judgment dismissing the claims against it on the grounds that liability issues in this matter are to be decided under New York state and federal law, not Canadian law, rendering it exempt from liability pursuant to a federal statute, 49 U.S.C. §30106(a) (the "Graves Amendment").

I agree.  The choice of law issue in this case is governed by the well-settled principles articulated in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972) and its progeny.  *Neumeier* provides that: (1) where the injured party and the driver are domiciled in the same state, and the car is registered there, the law of that state controls; and (2) where the driver's conduct occurred in the state where he resides and that state does not hold him liable for it, he should not be held liable solely on the basis of the victim's domicile; conversely, where the injured party is injured in his home state and its law permits recovery, the driver who has entered the state should not, absent special circumstances, be permitted to rely upon the law of his own state as a defense; and (3) where the injured party and the driver are domiciled in different states, then normally the applicable rule of law will be that of the state where the accident occurred, unless it is shown that displacing that rule will advance the relevant substantive law purposes without impairing the smooth operation of the multi-state system or producing uncertainty for litigants.  *Neumeier*, 31 N.Y.2d at 128.

Here, the driver, LeFor, resided in Canada.  All of the victims, though, were residents of New York and the motor vehicle accident took place in New York.  As such, the third *Neumeier* rule applies, and dictates that New York's state law and, therefore, federal law, will govern, absent a showing that substitution of Canadian law for the United States' liability scheme would advance the relevant substantive law purposes without impairing the multi-state system or creating a danger of inconsistent results.  No such showing has been made here.

Applying New York's state and federal laws to the plaintiffs' claims, Penske urges that it is absolved from any liability in this action by operation of 42 the Graves Amendment, which provides:

> An owner of a motor vehicle that rents or leases the vehicle to any person . . . shall not be liable under the law of any State or political subdivision thereof, by reason of being

the owner of the vehicle . . . , for harm to persons or property that results or arises out of the use, operation or possession of the vehicle during the period of the rental or lease, if– (1) the owner . . . is engaged in the trade of business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner . . .

49 U.S.C. §30106(a).

Here, it is undisputed that Penske is engaged in the business of renting or leasing motor vehicles, and was the owner of the tractor that was leased to P&W and operated by LeFor. Furthermore, despite ample opportunity for discovery, no evidence has been adduced that Penske, which owned the tractor, engaged in any negligence or criminal wrongdoing, particularly with respect to the tractor's maintenance and inspection.  LeFor's statement that the brakes did not respond adequately to his attempts to stop the vehicle prior to the collision, the sole basis for the non-moving defendants' attempt to raise a question of fact concerning Penske's maintenance of the tractor, is insufficient to do so.  It is undisputed that the trailer was grossly overloaded, and a post-accident inspection of the tractor demonstrated that the brakes were operating within acceptable limits.

In the alternative, the non-moving defendants urge the Court to find the Graves Amendment unconstitutional.  While those defendants correctly note that some isolated courts have found the Graves Amendment to be an unconstitutional exercise of congressional authority, I decline to follow those cases.  *See e.g., Merchants Ins. Group v. Mitsubishi Motor Credit Assoc.*, 2007 U.S. Dist. LEXIS 70942 at *10 n.4 (E.D.N.Y. 2007) (declining to follow the minority of cases which found the Graves Amendment unconstitutional); *Seymour v. Penske Truck Leasing Co.*, 2007 U.S. Dist. LEXIS 54843 (S.D. Ga. 2007) (same); *Garcia v. Vanguard Car Rental USA, Inc.*, 510 F. Supp. 2d 821

- 6 -

(M.D. Fla. 2007) (examining the Graves Amendment in detail and finding it constitutional).  Indeed,

although a lone case in this state, *Graham v. Dunkley*, 13 Misc.3d 790 (Sup. Ct. Queens County

2006), initially deemed the Graves Amendment unconstitutional, that finding has been reversed by

the Second Department, which "agree[d] with the weight of precedent that the Graves Amendment

[i]s a constitutional exercise of Congressional power."  *Graham*, 2008 N.Y. App. Div. LEXIS 593

(2d Dept. 2008).

The Commerce Clause grants Congress the authority to regulate the use of the channels of

interstate commerce, the instrumentalities of interstate commerce, and persons or things "in interstate

commerce," as well as activities having a substantial effect on interstate commerce.  *United States*

*v. Lopez*, 514 U.S. 549, 558-559 (1995).  The Graves Amendment regulates the market for leased

and rented motor vehicles, which are simultaneously instrumentalities of interstate commerce, things

in interstate commerce, and part of a class of activities which substantially affect interstate

commerce.  *See e.g.*, *Graham*, 2008 N.Y. App. Div. LEXIS 593 at *9-*11.  As such, I find that the

Graves Amendment represents a proper exercise of Congressional authority under the Commerce

Clause.

Accordingly, plaintiffs' claims against Penske are barred by operation of the Graves

Amendment, and Penske's motion for summary judgment dismissing those claims must be granted.

## II.    Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs Petrolawicz and Schmidt have moved for partial summary judgment on the issue

of negligence against the remaining defendants.  As set forth in Section I, *supra*, the Graves

Amendment prohibits the imposition of liability against Penske. Thus, the Court reviews plaintiffs'

motion insofar as it seeks judgment against the remaining defendants: P&W and the Transforce defendants.[2]

Under New York law, it is well settled that a driver is expected to maintain "a reasonably safe rate of speed and control of his/her vehicle" to avoid collisions when approaching another vehicle from the rear. *Power v. Hupart*, 260 A.D.2d 458, 458 (2d Dept. 1999); *Barile v. Lazzarini*, 222 A.D.2d 635, 637 (2d Dept. 1995). Clearly, LeFor failed to do that. Thus, "[a] rear-end collision with a stopped vehicle establishes a *prima facie* case of negligence on the part of the driver of the rear vehicle." *Pritchure v. Kandefer Plumbling & Heating*, 273 A.D.2d 790, 790 (4th Dept. 2000). *See Power*, 260 A.D.2d 458 (rule applies to both stopped and stopping vehicles). *See also Leal v. Wolff*, 224 A.D.2d 392, 393 (2d Dept. 1996). In order to rebut this *prima facie* showing of negligence, the driver of the rear vehicle must produce a non-negligent explanation for the collision, such as "mechanical failure, a sudden stop of the vehicle ahead, an unavoidable skidding on a wet pavement, or any other reasonable cause." *Power*, 260 A.D.2d at 458.

Here, it is undisputed that the tractor trailer operated by LeFor approached the Berkan vehicle from the rear, and that the Berkan vehicle was the last in a line of several vehicles who were lawfully slowed or stopped at a lighted intersection. It is undisputed that LeFor failed to stop the tractor trailer prior to colliding with the Berkan vehicle, with tragic consequences, and was thereafter ticketed for unsafe operation of a motor vehicle and operating an overweight vehicle. The impact was so severe that the Berkan vehicle was crushed under the weight of the truck.

---

[2] There appears to be no dispute that P&W and its parent corporations, as LeFor's employers, may be held liable for his alleged negligent acts within the scope of his employment under the theory of *respondeat superior*.

In response to this *prima facie* showing of negligence, the remaining defendants have produced no "non-negligent" explanation for the collision.  Although defendants generally allege, and have produced witness affidavits to suggest, that the intersection's signal light may have just turned green, or that the drivers of some of the vehicles in the same line of traffic were later unsure of whether they had come to a complete stop and/or had begun to accelerate, such facts, even if true, do not raise a material question of fact concerning whether the Berkan vehicle was stopped or stopping at the time of the collision, nor is there any evidence to establish another, non-negligent reason for the collision.  *See Barile*, 222 A.D.2d at 637 (driver's failure to recognize, by brake lights, hand signals, or otherwise, that the vehicle ahead of him had stopped is insufficient to preclude summary judgment, because driver's inability to stop before colliding with the vehicle establishes that he was traveling at an unsafe speed).  It was LeFor's legal obligation to stop, and he failed to do so.

Accordingly, I find that LeFor, who was acting in the scope of his employment with the remaining defendants, was negligent as a matter of law, and Petrolawicz and Schmidt's motions for partial summary judgment on the issue of negligence against the remaining defendants is therefore granted.

## CONCLUSION

Based on the foregoing, Penske's motions for summary judgment (Berkan Dkt. #56, Petrolawicz Dkt. #46 (styled as joint motion encompassing both Petrolawicz and Schmidt actions)) are granted, and plaintiffs' claims against Penske are dismissed, with prejudice.  Plaintiffs Petrolawicz and Schmidt's motions for partial summary judgment on the issue of negligence

(Petrolawicz Dkt. #38, Schmidt Dkt.#38) are granted as to the remaining defendants, P&W

Intermodal Inc., Transforce Inc., Transforce Income Fund, and Transport N.J.N., Inc. d/b/a Transpel

and P&W Intermodal.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
    February 19, 2008.